THE STATE, LEWIS, PROSECUTOR, v. JOHN R. MOORE ET AL.,
THE WATER WORKS COMPANY OF PLAINFIELD AND
THE INHABITANTS OF THE CITY OF PLAINFIELD.

The act of 1876 (*Rev. Sup.*, *p.* 650), for the construction, &c., of water
works for the purpose of supplying cities, towns and villages with
water, applies only to municipalities having not more than fifteen
thousand and not less than five hundred inhabitants. *Held* that, for
the purposes of this legislation, this classification by population is
sufficient to meet the constitutional requirement of generality.

On *certiorari.*

This writ brings up a contract entered into between the
Inhabitants of the City of Plainfield and the Water Works
Company of Plainfield for the construction of water works.

Argued at June Term, 1891, before Justices DEPUE, DIXON
and REED.

For the prosecutor, *Collins & Corbin.*

For the defendants, *Craig A. Marsh* and *Joseph D. Bedle.*

The opinion of the court was delivered by

REED, J.    This writ presents a single question. This ques-
tion involves the constitutionality of "An act for the construc-
tion, maintenance and operation of water works for the purpose
of supplying cities, towns and villages with water," passed in
1876.   *Rev. Sup.*, *p.* 650.

The contract brought up by the writ owes its existence and
legality to the provisions of the statute mentioned.

If the statute is a nullity, then the contract is void.

The statute is attacked upon the ground that it is special
and local legislation regulating the internal affairs of certain
cities, towns and villages.

The act provides that any number of persons, not less than
seven, a majority of whom shall reside in this state, may form
a company for the purpose of constructing, maintaining and
operating water works in any city, town, township, village or

seaside resort in this state having a population of not more
than fifteen thousand and not less than five hundred inhabit-
ants for the purpose of supplying such city, town, village or
seaside resort and the inhabitants thereof with water.

Another act passed in 1884 (*Rev. Sup.*, *p.* 654) provides
that it shall be lawful for the governing body of any municipal
corporation to enter into a contract with any aqueduct board or
water company for a term of years, for the obtaining and
furnishing of a supply of water to be used by such municipal-
ity for public uses; and the sum agreed to be paid by such
municipal corporation shall be levied as a tax upon the prop-
erty within said municipal corporation.

The act of 1876 applies only to municipalities with popula-
tions ranging between fifteen thousand and five hundred,
inclusive. The prosecutor insists that this is special legisla-
tion. The ground upon which this insistence is made, is that
this legislation is an attempt to classify municipalities by a
standard of population. It is claimed that a classification
based upon a difference of this character is unsubstantial, and
so encounters the constitutional prohibition against special
legislation.

From a glance at the cases in which the courts have been
called upon to pass upon the validity of statutes in view of
the constitutional interdict of special legislation, it will be
seen that a number of such acts have attempted to classify
municipalities by this standard.

In some instances such a classification has been adjudged
to be bad. On the other hand, there are cases in which the
classification has been sustained.

In the following cases the legislation was held to be uncon-
stitutional:

A statute conferring power to issue bonds to fund a floating
indebtedness limited in its operation to cities of not less than
twenty-five thousand inhabitants. *Anderson* v. *City of Tren-
ton*, 13 *Vroom* 486.

An act providing that tavern licenses should be granted by
the Court of Common Pleas in cities having not more than

four thousand nor less than four hundred population, and in towns having a population less than one thousand, in counties having not less than three thousand seven hundred nor more than forty thousand. *Zeigler* v. *Gaddis,* 15 *Vroom* 363.

An act providing that in boroughs of the third class the licensing power shall reside in the Common Pleas. *Hightstown* v. *Glenn,* 18 *Vroom* 105.

An act to establish an excise board in cities with more than fifteen thousand inhabitants. *Closson* v. *Trenton,* 19 *Vroom* 438.

In the following cases the legislation was supported :

An act establishing District Courts in cities of more than twenty thousand inhabitants. *Rutgers* v. *New Brunswick,* 13 *Vroom* 51.

An act fixing the term of councilmen in cities of the third class—namely, cities of less than twelve thousand inhabitants. *Randolph* v. *Wood,* 20 *Vroom* 85.

An act grading the amount of license fees by population of the municipalities in which the town is located. *Paul* v. *Gloucester County,* 21 *Vroom* 585.

An act providing for the opening and control of streets and parks, limited in its operation to cities under one hundred thousand inhabitants. *Warner* v. *Hoagland,* 22 *Vroom* 62.

An act forming a new system of government for counties having over one hundred and fifty thousand inhabitants. *Mortland* v. *Christian,* 23 *Vroom* 521, 538.

So it appears that an act which, by the test of population, sequesters certain municipalities for legislative action, may or may not be constitutional.

The line of distinction between the group of such statutes as are valid and the group of such acts as are void, is pointed out by Mr. Justice Depue in his opinion in the case of *Warner* v. *Hoagland,* 22 *Vroom* 62.

All the preceding cases are reviewed and the sentiments of the judges who delivered the opinions of the courts in the several cases are fully set forth.

A reiteration of these views would here be a profitless waste of space. The result of all the cases is this : that to a classification by population, the ordinary rule for ascertaining the soundness of all classification should be applied.

The question is, Does a difference in the size of a municipality in respect to population have any connection with the need or propriety of the legislative grant or regulation ?

If so, has the legislature selected for legislation those municipalities to which the legislation might be the more appropriate ?

If the exclusive fitness of the group of cities selected is in a substantial degree apparent, then the policy of so grouping the cities is for the legislature.

Applying this standard in the light of preceding decisions, we are of opinion that the act of 1876 will stand the constitutional test. The legislature could, upon reasonable grounds, conclude that the needs of municipalities for a water supply should be dealt with in the statutory method.

It could perceive a substantial reason for excluding from the operation of the act those small village communities whose needs for a water supply were not commensurate with the heavy burden of taxation which the provisions of the act would put upon their small totality of ratable property.

So, also, a reasonable ground can be conceived for excluding the larger cities. The demand for greater quantities of water, together with the ability of these cities to supply themselves, probably induced the legislature to compel them to build, own and manage their own water works. The act was obviously intended for the benefit of those municipalities which were not large enough to incur the expense of building extensive water works.

A degree of propriety in the exclusive application of the legislature to these cities can be perceived.

The writ of *certiorari* is dismissed.